# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BECKER DESIGNS, INC.,**

**Plaintiff,**

-vs-                                                                      Case No.  6:06-cv-56-Orl-22DAB

**BIKER DESIGN, INC.; ERGUN RECEL;
and NIR GIIST,**

**Defendants/Third-Party Plaintiffs,**

-vs-

**ROBERT BECKER and SUSAN BECKER,**

**Third-Party Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS COUNTERCLAIMS OF ERGUN RECEL AND NIR GIIST (Doc. No. 17)** |
| **FILED:** | **March 6, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

| MOTION: | MOTION TO DISMISS THIRD PARTY COMPLAINT OF ERGUN RECEL AND NIR GIIST (Doc. No. 23) |
|---|---|
| FILED: | March 14, 2006 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

This is an action alleging trademark and copyright infringement and related state law claims. Plaintiff asserts that Defendants have infringed upon Plaintiff's common law trademark, and its copyright design relating to motorcycle-themed clothing. Defendants have counterclaimed for state law claims of tortious interference with contract and business relationships, and Defendants have filed a similar third party complaint against Robert and Susan Becker, apparently principals of Plaintiff's corporation. In the instant motions, Plaintiff and the Beckers seek dismissal of the claims brought by the individual Defendants (but not the corporate Defendant), on the grounds that the cause of action, if any, belongs to the corporate Defendant, and not the individual principals of the corporation. This Court agrees and therefore **respectfully recommends** that the motions to dismiss the counterclaim and third party claim brought by the individual defendants be **granted.**

### STANDARDS OF LAW

In deciding a motion to dismiss, the court must accept as true all the factual allegations in the complaint, drawing all inferences derived from those facts in the light most favorable to the plaintiff. *S.E.C. v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.), *cert. denied, Peat Marwick Main & Co. v. Tew*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed 2d 90 (1974); *Little v. City of N.*

*Miami*, 805 F.2d 962, 965 (11th Cir. 1986). A count may not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim for relief. *See Conley v. Gibson*, 355 U.S. 41, 45- 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  Moreover, a court should grant a motion to dismiss where the factual allegations in the plaintiff's complaint present a dispositive legal issue precluding relief. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### ISSUES AND ANALYSIS

The counterclaim and third party complaint are brought by the corporate defendant and individual defendants, and purport to set forth claims of tortious interference with contract and business relationships.  Plaintiff/Counter-defendant and Third Party Defendants (herein, collectively, "the Beckers") contend that the claims fail to state a cognizable cause of action to the extent they are brought by Recel and Giist, because the business or contract relationship alleged is between the corporate defendant (herein "Biker") and its customers, and the individuals have no standing to assert the claim of the corporation.

The parties agree on the applicable law, as set forth in the Beckers' brief:

To state a claim for tortious interference with a business relationship, the plaintiff must allege: 1) the existence of a business relationship between the plaintiff and a third person under which the plaintiff has legal rights; 2) the defendant's knowledge of the existence of the relationship; 3) the defendant's intentional and unjustified interference with the relationship which induces or causes the third party not to perform; and 4) injury to the plaintiff as a result." *Tucci v. Smoothie King Franchises, Inc.*, 215 F.Supp.2d 1295, 1301-1302 (M.D. Fla. 2002), *citing*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994). A claim of tortious interference with a contract and a claim of tortious interference with a business relationship are essentially one and the same. *Pilkington v. United Airlines, Inc.*, 921 F.Supp. 740, 749 (M.D. Fla. 1996). The only practical difference is that in the former there is a contract and in the latter only a business relationship. *Pilkington*, at 749.

> As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

(Doc. No. 23 at 4-5).

The Beckers argue that the counterclaim and third party claim fail to allege the existence of a business relationship between Recel and Giist and their customers; rather, the claims assert that the Beckers interfered with "Biker Design's customers."

The Counterclaim and Third Party Complaint allege, inter alia, that Biker Design, Inc. is a corporation; that "[s]ince its formation as a Florida corporation back in 1997, Biker Design has been in the business of distributing and selling clothing goods to the motorcyclist or "biker" market"; that "[p]rior to Biker Design's formation in 1997 -- and beginning as far back as 1991 -- the company's principals, individually, used the Biker Design name, without the wing logo, to conduct the same business"; that Biker Design's reputation for quality has helped the business grow; that in late 2004 or early 2005, Biker Design began offering for sale a limited quantity of certain items; that after Plaintiff complained, Biker Design discontinued any new inventory of the disputed products; that the Becker defendants "took the additional step of identifying Biker Design customers" and sent threatening letters to them; that the Becker defendants demanded "Biker Design customers' signatures on settlement agreements"; that "Biker Design customers were coerced into curtailing performance of certain sales agreements with Biker Design" thereby resulting in tangible loss of revenue and intangible loss of goodwill.  The pleadings allege that the Beckers "knowingly and willfully identified and served Biker Design customers with threatening correspondence, settlement agreements and questionnaires with the specific intent to coerce such customers into terminating their sales of goods

-4-

purchased from Biker Design and to otherwise intentionally and unjustifiably interfere with Defendants/Counterplaintiffs' business and contractual relationships with their customers, thereby unlawfully diverting business and profits away from Defendants/Counterplaintiffs and otherwise inflicting damage and irreparable harm."

As noted by the Beckers, a claim for tortious interference with a business relationship requires proof that the plaintiff had a business relationship with identifiable customers. *Sarkis v. Pafford Oil Co., Inc.*, 697 So. 2d 524, 526 (Fla. 1 DCA 1997) (internal citations omitted).  As is evident, the pleadings, at best, set forth a cause of action for interference with Biker's customers.  Although Recel and Giist are alleged to have been in business prior to the formation of the corporation in 1997, and thus, presumably had customers then, there is no allegation that the Beckers interfered with any 1997 customers of Recel and Giist.  The claims are specific to actions that are alleged to have taken place in 2004 and 2005, directed to customers of Biker Design.

Recel and Giist contend that Biker's customers are "a continuation of the relationships that began during the six-year period when the individual Defendants were operating the  Biker Design business as individuals."  Thus, they contend, even if the contractual relationship is between Biker Design and the customer, the *business* relationship is "a product of the people behind the company."(Doc. No. 26 at 3).  The Court is unpersuaded.  As quoted above, Florida law requires the existence of a business relationship between the plaintiff and a third person *under which the plaintiff has legal rights.*  Recel and Giist identify no legal rights flowing from their "relationship" with Biker Design's customers.[1]  While Recel and Giist's activities are part of the history of the present

---

[1]Indeed, under Recel and Giist's interpretation, each and every corporate employee would be able to prosecute their own separate cause of action for interference of a relationship between their employer and the corporation's customers (continued...)

relationship between Biker and its customers; there is no doubt that the present business relationship is between Biker and its customers.

The Court also agrees that Recel, alleged to be President of Biker, and Giist, a manager, have no standing to assert a cause of action on Biker's behalf.  Recel and Giist assert that the Beckers should be estopped from this contention, as they sued Recel and Giist for infringement.  The analogy, however, is not apt.  Under copyright law, a person who contributes to another's infringement of a copyright may him or herself be liable:

> Although '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,' the[ ] doctrine[ ] of secondary liability emerged from common law principles and are well established in the law." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. ----, ----, 125 S.Ct. 2764, 2776, 162 L.Ed.2d 781 (2005) (internal citations omitted). In order to establish a claim of contributory copyright infringement, the plaintiff must allege "(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities." *Fonovisa v. Napster,* 2002 WL 398676, at *4 (N.D.Cal.2002) *(citing A & M Records, Inc. v. Napster,* 239 F.3d 1004, 1013 n. 2, 1019 (9th Cir.2001)); *see Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F.Supp.2d 877, 883 (N.D.Ill.2005); *Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918 (S.D.N.Y. Aug.29, 2002).

*Newborn v. Yahoo!, Inc*., 391 F.Supp.2d 181, 186 (D.D.C. 2005).  *See also Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir.1990).  As such, there is nothing *per se* inappropriate regarding the suit against Recel and Giist and the Court sees no grounds for estoppel.

Moreover, there is a difference between being sued as a defendant and having standing to sue as a plaintiff.  As the only claim pled is that of interference with Biker's customers, Recel and Giist

---

[1](...continued)
or would-be customers.  There is no support for such a result.

cannot sue in their individual capacities for redress of that claim. *See KMS Restaurant, Corp. v. Wendy's International, Inc.*, 361 F.3d 1321 (11 Cir. 2004).

Although a proposed amended third party complaint and amended counterclaim has been tendered by Recel and Giist, a review of the same shows that they suffer from the same fatal defects as the instant pleadings.  As a matter of law, Recel and Giist cannot prosecute a claim on behalf of Biker Design, and have not set forth, and cannot set forth, any cognizable claim for tortious interference on their own behalf.  For that reason, it is **respectfully recommended** that the District Court **grant** the motions to dismiss, without leave to amend.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 4, 2006.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

-7-